We are here because of assumptions, wrong assumptions that led to a breakdown of the fact-finding process. This appeal presents three instances of this breakdown. First, based on assumptions that Detective Hankel made before he had all the facts, the government argued and the district judge found that Mr. Alvarez stole $6,000, even though the purported victim consistently denied having been a victim of a theft, and Detective Hankel himself did not observe a theft. Second, the government argues that the district court applied a clear and convincing evidence standard to find the theft, even though the district court stated in its order granting bail that it had not applied the standard and the evidence did not satisfy the standard. And third, when Mr. Alvarez sought to clarify... Did the court actually say that the evidence did not satisfy the clear and convincing standard? What the court said was that it presents a substantial issue whether or not the court needed to find substantial evidence, and if this court found that it needed to find clear and convincing evidence, then it had erred, and this would likely result in a reduced sentence. So, there would have been no reason for it to engage in that discussion if it had found it by clear and convincing evidence, and that is why the court granted bail pending appeal. And then the third breakdown occurred when Mr. Alvarez sought to clarify the very evidence on which the district court said it would rely upon to increase the sentence, and the district court warned that doing so would result in an even higher sentence. This court should reverse, remand, and reassign. Now why should we reassign? I think the court should reassign because the judge has already said that if Mr. Alvarez presented evidence, the evidence that the court itself relied on, and Mr. Alvarez was not successful in convincing the court to change his mind about evidence the court has already relied on, and on which the government bears a burden of proof, an even higher sentence would be imposed. And that, I don't say that this is a recusal case, but the appearance of justice, I would say, would suffer if a court was given that opportunity. Where does this leave Mr. Alvarez if he now seeks to put on the evidence, and let's be clear what this evidence is, this is not outside evidence of something different, this is the evidence on the very issues that the court relied on, Detective Henkel's statements and the reliability of the DNA evidence. If Mr. Alvarez puts on that evidence, this judge has already said if he finds it compelling, the sentence will be even higher. I thought you just indicated that in granting the motion for bail, the same judge said if the clear and convincing standard does apply here, I would find that that's not met. That doesn't seem like he's so wedded and he's going to find that no matter what, so which way is it? He's almost saying he would have to find against the government if that's the standard. He's saying that he will take evidence. So what he said is that if it requires clear and convincing evidence, we will take evidence. But what he said before is if we take evidence and you don't change my mind, if the evidence is compelling, then the sentence will be even higher. So again, I'm not saying this is a case where he is so biased and his mind is so made up that recusal would be required, but the appearance of justice, of requiring somebody to go back before a court who has already said that a full hearing would result in an even higher sentence, not just the higher sentence that the court imposed of a year plus six months home detention on a zero to six guidelines case where the government was asking for six months, but an even higher sentence that was already imposed. If the court doesn't have any questions, I'd reserve my remainder. Could you address, since you have a couple of moments, the argument that post Booker and the fact that the court has to apply 3553A multiple factors, that the application of clear and convincing standard, which was originated pre Booker, should not apply here because of the subtleties, complexities, and it's so hard to ascertain what's disproportionate and what the causation is when you've got six different factors. What's your response to that? My response to that is there may be a case in which that is true. So if a judge says these are the ten different things that I've considered and some of them are studies and some of them are the guy's record and some of them are something else, that may possibly be true that it would be difficult to apply a clear and convincing standard to a multifactor analysis, but here the record is very clear. The district judge said, if I make this finding, then six months will not be enough. If I make this finding and you contest it, one year will not be enough. It's always been based on this finding. Throughout the district court record, he said it at... Was your client charged with theft at any time? No. Again, as to the multifactor analysis on the clear and convincing, this is a case where the judge actually found a separate crime that the court found warranted more punishment, which is one of the factors that this court applies when determining clear and convincing evidence. Is there any case that you can point to that says that it's error or a violation of due process for the court to say, if I make this finding, your sentence will be higher? You know, there are three cases that I cited in my briefs, Thorne, Cruz, and Crocker. In each one of those cases, the judge said, okay, you can go to trial, but I think in Thorne, it was if you cross-examine that chemist, I'm going to take that into consideration at sentencing. In Cruz, it's if you go to trial with no good defense, I'm going to take that into consideration at sentencing. And in Crocker, it was if you go to trial without any real defense, I'm going to take that into consideration at sentencing. In all three of those cases, the judge, in fact, did take it into consideration in sentencing, and those courts reversed and reassigned. So I think it's clear that if Mr. Alvarez had actually taken the job up on his offer and presented the evidence, again, to be clear, the evidence that the judge said he was relying on, and Mr. Alvarez received a higher sentence, that would be a violation of due process. So the question is, if Mr. Alvarez is deterred, and he forgoes the opportunity to have the judge look at the very evidence the judge says he's relying on, does that mean his due process rights have not been violated? And I would argue that the answer to that has to be no. I mean, it would be tyranny if judges were allowed to say, if you do this, that, or the other, I'm going to slam you. And yet a judge can't say, if this goes to trial versus a plea, I mean, it happens all the time because of the way the guidelines work. You do pay a penalty, sometimes a two-level, three-level difference under the guidelines if you choose to go to trial and don't accept responsibility. There's almost an inherent vindictiveness there, but that's okay, right? That's okay because that's about acceptance of responsibility. Here, the judge had already allowed him his two points off for acceptance of responsibility. If the judge just wants... That's an exception to the vindictiveness, the chilling effect. It's okay because you do it under the rubric of acceptance of responsibility. If it weren't for that safe harbor, that would be problematic under the Constitution? Oh, yes. I mean, the courts have been very clear that you can punish somebody after trial for a couple of things, for not accepting responsibility. But in this case, even the acceptance of responsibility would have only been two levels. He still would have been zero to six. You can do it for obstruction of justice, obviously, if you go to trial and you lie. But this case, all he wanted to do was show the judge the evidence that the judge was relying on. And you can do it if the judge finds out different things at trial that really cast the entire thing in a different light. But again, all Mr. Alvarez was asking was for the judge to look at the very evidence that the judge said he was relying on. And when I was preparing for argument, I noted this quote from Thorn v. U.S., which is the 2012 First Circuit case, in which the court said, If it was legitimate for the government to rely on the chemist's opinion to meet its burden on proving that Thorn possessed a measurable quantity of heroin, it was equally legitimate for the defense to test the validity of that opinion through cross-examination. If the government is going to rely on Henkel's observations, which were inconclusive, it's legitimate for Mr. Alvarez to say, well, you should really hear from Mr. Henkel because what you'll learn is his observation was inconclusive. If the government is going to rely on DNA evidence, it's legitimate for Mr. Alvarez to say, A, there's a high probability of cross-contamination, which the judge said, I acknowledge that. And B, we now learn that this type of DNA evidence, the combined probability of inclusion, is not reliable and shouldn't even be accepted in court. So we're not talking about Mr. Alvarez putting on new evidence. We're talking about Mr. Alvarez challenging the very evidence that the court said. So it's the right of cross-examination that's being unconstitutionally chilled. Yes. All right. Now I'm over. Now you're over. Thank you, counsel. Morning. Morning. May it please the court, I'd like to first address the issue of plain error with respect to the vindictiveness allegation. It's important for the court to realize where we were in the sentencing process at the time this vindictiveness issue arose. The court had already issued its ruling. It had found that the defendant had committed the theft, and it had ended the factual finding phase. The defense counsel then started arguing the 3553 factors, and then the defendant started his allocation. And it's at that time that the defendant started deeming Well, wait a second. Wait a second. The court himself said, the court finds substantial evidence supports the government's claim that Mr. Alvarez took the money, and that is an aggravating factor under 3553. So he was considering it under the 3553 factors. Correct. And I'd like to address that when I get into the issue as to a plain error with respect to whether or not he stole the money, but with respect to the vindictive claim, I'm trying to establish the context in which this arose. What happened then was when the defendant started allocuting, he then started digging a hole for himself, making false statements to the district court. He stated that the evidence had been misrepresented, and I stopped the proceedings at that time to hear what these, quote, misrepresentations were. We went through them all, and there was no misrepresentation at all. He also claimed that he didn't realize theft was going to be an issue at sentencing, when in fact, that's flatly contradicted by the change of plea proceedings, in which the district court actually put them over for a day so that the defendant could consider that precise issue. He then said that Hankel's view within the conic storage container was obstructed, and that he couldn't possibly see the defendant when he had already admitted that by not objecting to the pre-sentence report, by citing to Hankel's observations in his own statement of facts, and not 16 pages prior to the defendant claiming that Hankel could not have seen him, his defense attorney was saying, yes, Hankel saw him, and he tried to explain away the significance of those observations. It's then that the defense suggested to the district court that they should have a second opportunity, a second hearing, to impeach Hankel, a person whose observations the defendant had already adopted in his papers and in his arguments. At that time, there was no obligation on the district court's part to grant any further hearings. They could simply say that I've ruled on this matter, you've had the opportunity to litigate it, and now you're backtracking on what you've already admitted, there's no need for a further proceeding. And it was entirely appropriate for the court to offer the defendant an incentive, if you accept responsibility for this, rather than dig a further hole for yourself, I will give you a lesser sentence than what I was contemplating. Now, the defense counsel says that this is not what he said. Except that's not what he did. That's not what the, it looks like that's not what the trial court did, say I was contemplating, you know, year plus, and, but if you accept responsibility, you know, instead he ratcheted up the other way, saying, and if you decide to go forward with this, and I find that the Hankel testimony is compelling, I'm going to give you even more than what I was going to give, which is already in excess of what the government had asked. I don't read that way, because the term, that being said, he talks about the severe sentence that he wants to impose, and then he says, that being said, I will sentence you today to this. But even if the court disagrees with me, and views that this is. But right after that, he says, and if you bring in Detective Hankel, and I find his testimony compelling, I don't think one year is enough. After he had already just said, you're going to get, well, one year plus home detention, confinement. Even if the court disagrees with me, and views it not as an incentive, but rather a warning of an increase. This is entirely appropriate by the court, because it's not a warning that further litigation is going to be punished, because the court said it could cut both ways. It could benefit you if you convince me to change my opinion. It was a warning that further false statements by the defendant that he was being engaged in at that time, and baseless accusations against a police officer, who actually had the courage to expose the defendant's theft, would have consequences, and bad behavior by a defendant during a sentencing proceeding, or proceeding in plural. Did the defense counsel say he wanted this hearing in order to present the defendant to testify? I thought it was to bring in other witnesses about Hankel's past, and some other. He wanted to challenge the, Hankel's observations. There were two things. He said, first of all, he wanted to challenge that Hankel ever had an opportunity to see what he saw. Yet, he had already conceded that in his papers, and his earlier argument. But you said that the threat was, if you come in, Mr. Defendant, and give further false testimony, that was where it's going to cut the other way. And I don't see that in here. Was there some indication from counsel that he wanted this hearing in order to bring in, to have his defendant testify on the stand, and commit perjury? Not necessarily false testimony by the defendant, but certainly recanting his prior admissions by trying to challenge the observations that he had already conceded. Well, exercising his right of cross-examination, as you would say, inconsistent with his earlier concession. Right. Well, like I said, it's where we are in these proceedings. The court had already ruled on this, and now he wants to do an about-face. But there's a difference between penalizing somebody for the exercise of cross-examination, and penalizing somebody for committing perjury on the stand. There's a difference, but there's also, I think, bad behavior when a defendant is willing to sully the name of another officer when he has no basis whatsoever to support it. For example, the other point that they raised was that they accused, they said that in the Ninth Circuit, that the Ninth Circuit had found that Hankel observations in another case were inaccurate. And that is flatly untrue. I addressed that point in the government's appellate brief at page 44. They were making false and spurious allegations against an officer. So I'm getting short. Well, they were actually just contesting, they were challenging the validity of his testimony. I mean, if you really thought you could prove that he had stolen the money, wouldn't you have charged him with theft? The government has always conceded that there was an element of doubt with respect to the case in that the victim, Mr. Hernandez, never conceded that there was a theft. And so what the parties agreed to do was mitigate that sentencing. Well, the victim said, I had $10,000 in the lockbox, and that's what they found in the lockbox. I'm sorry? Isn't that more persuasive evidence that the victim said, I had $10,000, I mean, the defendant from whom allegedly the money was stolen, said, I had $10,000 in the lockbox, and they found $10,000 in the lockbox. But did you want him to concede? My view of the reason there's $10,000 in the lockbox is because the defendant found out that there was $10,000, according to Hernandez, and he took the excess over that amount. That's not what the record shows. He said he had $12,500 or something before Christmas, and I thought he had, at some point, I thought he had given some explanation of how he got the $10,000, and the fact that he would, that was his little piggy bank, and he would closely keep track of that. No, he never said it was his piggy bank, and in fact, what he said was contrary to what the findings of the court were when they forfeited that money as proceeds of drug activity. But what he said was, he said there was about $10,000 in there, and then my view is that the defendant took everything that was in excess of $10,000. It's true that, let me talk about this issue with regard to the government. But are you just, that's not, there's no evidence of that in the record. Of what? Of your view, of your view, that he took in excess of the $10,000. I think there's overwhelming circumstantial evidence of precisely that. If I can... I mean, the record evidence, he says he last counted it in December, remembered having $12,500, of which he used $2,200 for Christmas and $500 to pay for his motorhome. So he was, it wasn't just relying on what Hernandez, Alvarez told him, or somebody else. I mean, this was based on his own independent memory of what he thought he had in there. I think we're talking past one another. What I mean is, is that the defendant spoke to Hernandez and asked him how much money he had there. And the, and Hernandez told him $10,000. It's then that the defendant goes into the lockbox, and then when the money is seized from the lockbox, there's $10,000. My point is, is that defendant, when he discovered there was $16,000 in the lockbox, he took the excess. That's the assumption that's not consistent. There wasn't $16,000. Hernandez himself thought there was only $10,000 to start with and $10,000 to end it with. That's the biggest problem, probably, why he decided not to prosecute that claim. The parties agreed to litigate at sentencing, at the lower standard, whether or not the defendant stole the money. And the evidence, I believe, was rather overwhelming. There was an element of doubt. Is it a reasonable doubt? Perhaps. But the government never believed that it didn't rise to the clear and convincing standard. I want to point to some things that might not be clear to the Court in the record here. And that is, is that it's important to realize that Hernandez was, had been charged in a complaint, and an arrest warrant was issued for him for money laundering in connection with a drug operation. The $10,000 was seized, and it was later forfeited as proceeds of drug activity. And so when Hernandez is going through the calculus of adding and subtracting, he's not saying that, oh, this was proceeds of drug activity. What he was saying was that these were legitimate business transactions, which the courts later found to be not the case. It was, in fact, proceeds of drug activity. So the defendant, Mr. Hernandez, was not telling the truth about that. And it's interesting also that the amount that he says is in the Conex storage container is precisely $1 under the currency transaction reporting amount of $10,000. So it's, the government took the view and took. So what was found was $9,999. The transaction amount is reportable in excess of $10,000. $10,000 is not reported. Now, there is overwhelming evidence in this case, and the defense tries to dismiss a lot of it in its pleadings. And I won't have time to respond to all of them, but I wanted to respond to some of them. Well, you're well over your time, so. Yes, I didn't realize that, yes. If you want to quickly sum up what there is. I'd like to, the salient points is the defense says that Henkel came in during this brief moment and that the theft had to occur during this brief moment, and that's just not true. Henkel came in during the latter portion of this five-minute window that the defendant was stealing the money. And I would refer the court to the excerpt of Record 206, which is the PolCam video evidence, that actually shows that Henkel was outside the Conex facility for at least one and a half minutes. They say that the other officer, Jong, had to have seen what was happening, and there's nothing in the record that supports that. They could have introduced Jong's interview, and they did not. And also that they argue that the district court disregarded the defendant's tampering with a rubber band arrangement. When I explained to the district court about the rubber band arrangement, that it's curiously bundled at one end, the money seized from the car, and one end, the stuff found in the Conex container, and that Mr. Hernandez says he bundled at both ends, and that meant the defendant had tampered with that bundling arrangement at the time that he seized the money. The district court's response was yes. That's not disregarding. That's agreeing with the government's argument. And I'm way over my time, and I apologize. All right. Thank you very much, counsel. I'll give you a minute, Ms. Chen, since the government went over. Unless the court has specific questions, I just want to clarify the record with respect to whether Mr. Alvarez made false statements, because I think that's quite a serious accusation, and it's not borne out at all by the record. The first thing that the government says was that Mr. Alvarez accused the government of misrepresentations. What Mr. Alvarez said was, you know, it wasn't, I didn't go immediately to my car after this incident. It was 45 minutes, and the government conceded that it was, in fact, 45 minutes, and the government did not misrepresent. It was the court that had misunderstood. The second thing the government has said is that Mr. Alvarez said he didn't realize that he was going to be fighting a theft at the sentencing, but that was made clear at the change of plea. Mr. Alvarez is not a lawyer. Mr. Alvarez is the litigant. He's a defendant. He has no priors. He's a police officer. His understanding was that he was pleading guilty to a false statement, not a theft. I'm sure his lawyer explained it to him, but sometimes they don't hear exactly. That's not a misrepresentation. Probably most importantly, he was not saying that Hankel lied. What he was saying was that Hankel's observations were inconclusive. As his lawyer said to the court, in terms of the observations and the timing of Mr. Hankel, there were statements that were made by him during the course of the hearing. In other words, he wanted an opportunity for the court to hear directly from Mr. Hankel. That also was not a misrepresentation. All right. Thank you, counsel. U.S. v. Alvarez, please submit it.
judges: Pregerson, Wardlaw, Chen